## BODENHOFER v. SMITH PLUMBING CO., et al.

Industrial Commission.
March 28, 1949.

John N. Tolar, Fort Lauderdale, for claimant.

Morehead, Pallot, Smith, Green & Phillips, E. A. Poppell, of counsel, Miami, for Smith Plumbing Co. and insurance carrier.

Blackwell, Walker & Gray, Edwin H. Underwood, Jr., of counsel, Miami, for Hillsboro Club and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

The claimant Clarence R. Bodenhofer became employed as a plumber by Smith Plumbing Co. in Fort Lauderdale on February 15, 1947. During the course of his employment he was required to work in ditches and to come in frequent contact with fresh earth, muck and sand. In April 1947 he began to develop a chronic dermatitis of the hands and the right foot for which beginning in June medical attention was provided. He was disabled by dermatitis from June 7 to June 24, 1947, for which period he was paid compensation by the insurance carrier for his employer, and then returned to work for the same employer until July 18, 1947 when he was laid off. On

July 24, 1947 he was employed as a plumber by Hillsboro Club in Broward County where his work again brought him into contact with dirt. His employment there continued until February 18, 1948 when he discontinued work because of his dermatitis. Thereafter until the present time his condition—lichenfied eczmatoid dermatitis—permitted him to work a total of only 3 weeks and 2 days, at Hillsboro Club for 2 days during April and for 3 weeks during June, 1948.

Bodenhofer filed claims against both Smith Plumbing Co., where he was employed at the time his dermatitis first developed, and against Hillsboro Club, for the benefits of the workmen's compensation law on account of his disability and the medical expense incidental thereto. The two claims were consolidated and heard together. The workmen's compensation law provides as follows:

> Section 440.151 (1) (a) F.S.A. "Where the employer and employee are subject to the provisions of the workmen's compensation law, the disablement or death of an employee resulting from an occupational disease as hereinafter defined shall be treated as the happening of an injury by accident, notwithstanding any other provisions of this chapter, and the employee or, in case of death, his dependents shall be entitled to compensation as provided by this chapter, except as hereinafter otherwise provided; and the practice and procedure prescribed by this chapter shall apply to all proceedings under this section, except as hereafter otherwise provided. Provided, however, that in no case shall an employer be liable for compensation under the provisions of this section unless such disease has resulted from the nature of the employment in which the employee was engaged, under such employer and was actually contracted while so engaged, meaning by 'nature of the employment' that to the occupation in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazard of such disease in such employment. . . ."

> Id. (2) "Whenever used in this section the term 'occupational disease' shall be construed to mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment, and to exclude all ordinary diseases of life to which the general public are exposed."

> Id. (5) "Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier. . . ."

The evidence established that the claimant's dermatitis was contracted while engaged in his work with Smith Plumbing Co. and that he suffered recurrent attacks of increasing severity during and subsequent to his employment by Hillsboro Club. The following questions are presented by the record:

(1) Is claimant's dermatitis to be properly classified as an occupational disease, within the meaning of the workmen's compensation law? If so, one or the other of the two employers mentioned may be considered liable for the benefits claimed, depending upon the answer to the next question.

(2) Did claimant's exposure to the hazards of this disease in his employment with Hillsboro Club constitute an "injurious" exposure? If so, his first employer, Smith Plumbing Co. is not liable; and two subsidiary questions arise: (a) Was claimant's relationship with Hillsboro Club that of employee or that of independent contractor? If determined to be that of employee, (b) Is a claim against Hillsboro Club barred by a failure to comply with the requirements of section 440.18 F.S.A. regarding notice of injury?

A consideration of whether claimant's disabling dermatitis is properly classifiable as an occupational disease involves a determination of whether in addition to having developed during the course of his employment, which is not in dispute, the condition was actually caused by his contact with dirt, muck, or other substances in his work. The weight of the evidence on this point is reflected in the testimony of Dr. Edward A. Abbey, a dermatologist and claimant's attending physician, who stated that in the light of claimant's history and of the objective medical findings, it was probable that his condition arose from contact with muck or dirt in the course of his work as a plumber. The fact that for many years prior to that time he had done plumbing work requiring frequent contact with dirt, without developing dermatitis, would have no material bearing, for the reason that although continued contact with certain substances will in many cases lead to an immunity against injurious effect, in other cases repeated contact will cause the development of a sensitivity to those substances resulting in dermatitis.

"Occupational dermatitis," or chronic dermatitis of a contact type, is, according to medical authority, ordinarily relieved by removal from the offending substance. It is urged by counsel for both the insurance carriers that since claimant's removal

from the muck and dirt said to be responsible for his dermatitis failed to alleviate his condition, the conclusion should follow that he does not suffer from an occupational dermatitis. But the medical testimony showed that claimant's skin affection, after progressing to a chronic stage, served to activate a potential sensitivity to other and new irritants, with increasing distress due to contact with substances other than muck or dirt; and that in such cases the ordinary rule does not apply, and the prospects of an improvement through removal from contact with the original offending cause are rendered uncertain.

It being established, then, by the weight of evidence that the development of claimant's dermatitis was due to his contact with muck or fresh earth in the course of his work, the further consideration arises as to whether the occupation in which he was engaged involves a particular hazard of that disease that distinguishes it from the usual run of occupations and is in excess of the hazard of such disease in other employments generally, or whether his condition is an ordinary disease of life to which the general public are exposed. The testimony showed that although persons in all walks of life may and sometimes do contract dermatitis from various sources, including contact with dirt, those, such as the claimant, whose daily work requires repeated and continual handling and physical contact with fresh earth or muck are more likely to develop contact dermatitis than persons in the usual run of occupations. It is established by that testimony that the claimant's dermatitis should properly be termed an occupational disease, and is compensable as such.

The question is now presented as to whether claimant's exposure to the hazards of this disease in his employment with Hillsboro Club constituted an "injurious" exposure, within the meaning of the provisions of section 440.151 (5), F.S.A. quoted above. If so, then the Hillsboro Club, as the employer in whose employment the claimant "was last injuriously exposed to the hazards of such disease" is with its insurance carrier alone liable for the compensation payable to claimant, without right to contribution from Smith Plumbing Co.; but if not, Smith Plumbing Co., in whose employment the claimant's disease had its inception, is with its carrier alone liable.

The evidence shows that claimant's disease had become chronic and had temporarily reached a disabling stage before the termination of his work with Smith Plumbing Co., and

that he continued thereafter to suffer from dermatitis of varying and gradually increasing severity, with intermittent periods of temporary improvement, during and after his employment by Hillsboro Club. The medical and other testimony in the record supports the conclusion that the progress of the disease was not materially affected by his work at Hillsboro Club. The underlying cause of claimant's dermatitis is shown to lie in the conditions surrounding his work with Smith Plumbing Co. By the time he became employed by Hillsboro Club, it is indicated that he had already become sensitized, through the peculiar effect of his disease, to many and various irritants other than the original offending substance. The activation of a sensitivity to new irritants is shown to be the principal factor in the advancement of his disease. Under these circumstances, it would be a matter of mere conjecture and speculation as to whether the continued progress of the disease was due to further exposure to the original irritant rather than other irritants to which he had become sensitized and which he might have encountered at any time and place. The evidence cannot be said to show that claimant's work at Hillsboro Club involved an exposure which was injurious in nature. It is therefore unnecessary to discuss the other questions mentioned.

The Smith Plumbing Co. and its insurance carrier are hereby found liable for the benefits of the workmen's compensation law payable to the claimant on account of his disability. It is, accordingly, ordered that the insurance carrier for said employer:

(1) Pay to the claimant compensation at a rate of $22 a week, beginning as of February 18, 1948, less three weeks and two days, said payments to be made current and to continue until modified or terminated in accordance with the provisions of the workmen's compensation law.

(2) Reimburse the claimant for the cost of medical supplies purchased by him for the relief of his dermatitis, in the amount of $77.22.

(3) Pay the reasonable cost of the medical services made necessary by claimant's dermatitis, and furnish such additional treatment as the nature of his condition or the process of recovery may require.

(4) Pay to John N. Tolar, Esq., the sum of $325 as a reasonable fee for his legal services on behalf of the claimant herein.